```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :        16 Cr. 567 (JSR)
      -v-                           :
                                    :        OPINION
                                    :        AND ORDER
KEVIN WALKER and TYRONE             :
WALKER,                             :
                                    :
      Defendants.                   :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Before the Court is defendant Kevin Walker's motion to suppress evidence obtained from a search of his bedroom on March 30, 2016. See K. Walker Mem., ECF No. 38, at 18-23. The defendant argues that although both he and his mother, Lelia Walker, consented to such a search, those consents were not voluntary in light of the purportedly coercive atmosphere in which they were given. These precise issues were the subject of a three-day evidentiary hearing just last month before the Honorable Ronnie Abrams in another Hobbs Act case brought against Kevin Walker. See United States v. Walker, No. 16-cr-327 (RA) (S.D.N.Y. 2016). Following the hearing, Judge Abrams received briefing, heard oral argument, and denied Kevin Walker's motion from the bench in a characteristically thoughtful and thorough decision. See Transcript ("Tr."), United States v. Walker, No. 16-cr-327 (RA) (S.D.N.Y. Feb. 22, 2016), at 480-492 ("Walker I"). Upon careful review of the full record of that hearing, as well as the parties' submissions in the instant case,

1

the Court independently finds that the record conclusively establishes that the consents to search Kevin Walker's bedroom were voluntary. Accordingly, the Court hereby denies the defendant's motion in its entirety, substantially for the reasons given in Walker I.

Notwithstanding the lengthy evidentiary hearing just held on the very issues currently before the Court, Kevin Walker requests a second evidentiary hearing before the Court decides the voluntariness issues. While a second hearing might have been warranted if there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here. See United States v. Ashburn, No. 11-cr-303 (NGG), 2014 WL 1800409, at *7 (E.D.N.Y. May 5, 2014) ("Simply put, [the defendant] provides no indication or explanation as to what, if any, additional contested issues of fact concerning the search and seizure require a second evidentiary hearing."). Importantly, in crediting the Government's witnesses over the defendant (on the small number of issues where they diverged), Walker I relied not on evaluations of witness demeanor but on the consistency and internal logic of the competing accounts, which is equally susceptible to analysis on a paper record.[1]

---

[1] For example, the Court agrees with Walker I that Kevin Walker's testimony that officers told him they would search his bedroom with or without his consent, and in fact began searching his apartment before he consented, is not credible. See Tr. at 165-66, 168, 187-88. Not only did the police officers uniformly deny it, see id. at 25, 235, but in a taped station house interview with the defendant a

2

The defendant's motion to suppress also fails for the separate and independent reason that he is collaterally estopped from rearguing the consent issues - notwithstanding the parties' seeming agreement that Walker I has no preclusive effect because it is has not been upheld on appeal, see Transcript dated Feb. 23, 2017, at 72-74. As a threshold matter, whether collateral estoppel may be applied against a criminal defendant appears to be an open question in the Second Circuit, see United States v. Hoey, No. 15-cr-229 (PAE), 2016 WL 270871, at *3 (S.D.N.Y. Jan. 21, 2016), but courts outside this circuit have held that criminal defendants may be estopped from rearguing a pretrial denial of suppression, at least where, as here, the defendant "offer[s] no new evidence or argument that would cast doubt on the [earlier] district court's ruling." See United States v. McManaman, 673 F.3d 841, 847-48 (8th Cir. 2012); United States v. Rosenberger, 872 F.2d 240, 242 (8th Cir. 1989). Accordingly, in principle, collateral estoppel may properly be applied against Kevin Walker to preclude further litigation on the voluntariness of consent.

Whether Walker I has preclusive effects is a question of federal law, because it was decided by a federal court. See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 41-42 (2d Cir. 1986). In the

---

few hours later, the defendant reaffirmed that he had consented to the search at the time without making similar accusations. See Gov't Ex. 13. In fact, Kevin Walker's only complaint at the station house was that he had not been presented with a written consent form when he verbally agreed to the search. See id. In light of these facts, the Court does not credit Walker's after-the-fact account.

3

Second Circuit, for collateral estoppel to apply, "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." Id. at 44. Here, it is plain that the first three elements are satisfied by Walker I, which covered identical issues, was vigorously litigated over a three-day hearing, and resulted in a decision necessarily and expressly finding the consents to search voluntary.

Thus, the only dispute is whether Walker I may be treated as a "valid and final judgment on the merits" when, despite Judge Abrams' denial of the suppression motion, the underlying case before her has not yet been completed and her ruling has not been the subject of any affirmance on appeal. Yet, as a practical matter, there is no doubt that Judge Abrams' oral ruling was her final judgment on the motion to suppression; and ever "[s]ince Judge Friendly's seminal opinion in Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir.1961), it has been settled that a judgment that is not 'final' in the sense of 28 U.S.C. § 1291 can nonetheless be considered 'final' in the sense of precluding further litigation of issues that were actually determined in such a judgment." See TM Patents, L.P. v. IBM Corp., 72 F. Supp. 2d 370, 375-76 (S.D.N.Y. 1999).

4

More particularly, whether a decision should be treated as final for purposes of collateral estoppel "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' . . . may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." Lummus, 297 F.2d at 89; see also Kurlan v. C.I.R., 343 F.2d 625, 628 n.1 (2d Cir. 1965) ("[G]eneral expressions that only final judgments can ever have collateral estoppel effect are considerably overstated.").

Cases applying Lummus confirm that the availability of appellate review is merely one factor to consider, and not a necessary condition, in evaluating the finality of a prior decision. For example, in TM Patents, the district court held that a prior federal court's construction of a patent under Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), had preclusive effect, even though the parties reached a settlement following the patent construction decision, which was therefore never appealed. See 72 F. Supp. 2d at 376-77. The district court explained that in the prior case, the district court had held a two-day hearing, "issued a very thorough ruling" that "dispos[ed] of all disputed issues," and relied on that ruling to give preliminary jury instructions. Id. at 377. Moreover, "[t]he jurors were not free to adopt a contrary construction of the patent claims in suit, and they were so

5

advised." Id. Though the case then settled, as to the issue of claim construction "[n]othing more remained to be adjudicated." Id. Accordingly, "under Lummus and its progeny, the results of the Markman hearing in the [prior action] were sufficiently 'final' to permit application of collateral estoppel — even though the matter to which they were necessary was never reduced to a final judgment after verdict." Id.

The same is true in this case. Kevin Walker plainly had a more than adequate opportunity to argue that his and his mother's consents to search his bedroom were involuntary. Judge Abrams held a three-day hearing at which the defendant and his mother both testified, as did key members of the law enforcement team that obtained their consent and conducted the search. That was followed by written submissions from the parties, oral argument, and a well-reasoned decision from Judge Abrams. Nor is there any reason to believe her decision will be revisited in the case before her, which is rapidly heading toward trial. For all practical purposes, Walker I is therefore final so far as the suppression issue is concerned.

Kevin Walker nonetheless argues that appellate review is required before a judgment can be considered final. See Transcript dated Feb. 23, at 72-74. In so arguing, the defendant cites a case applying New York law, see Johnson v. Watkins, 101 F.3d 792 (2d Cir. 1996) (applying New York law). But New York state law does not govern the instant issue, and the Court is not aware of any binding

6

authority that takes such a rigid approach to federal collateral estoppel.

Concededly, the Second Circuit has gone so far as to observe, in dictum, that "although failure to appeal does not prevent preclusion, inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion." See Gelb, 798 F.2d at 44 (citations omitted). But Gelb did not profess to overrule the Second Circuit's earlier statement in Lummus that the availability of appellate review was simply one factor to consider in evaluating the finality of a district court decision for preclusion purposes; and a closer reading of Gelb reveals that an "inability to obtain appellate review" refers not to a temporary barrier to appeal that may eventually be lifted by the conclusion of the case, but only to decisions that are unreviewable as a matter of law by their very nature. Thus, for example, the Second Circuit has noted that decisions made by a district court attendant to a remand order likely have no preclusive effect, because such orders are unreviewable as a matter of law "whether erroneous or not." See Medisys Health Network, Inc. v. Local 348-S United Food & Comm'l Workers, AFL-CIO & CLC, 337 F.3d 119, 124 (2d Cir. 2003) (emphasis omitted).[2]

---

[2] As for the cases dealing with the "lack of [appellate] review once an appeal is taken," these rest less on principles of finality than on whether an issue is "necessarily decided." See Gelb, 798 F.2d at 45. That is not implicated by the instant case, because there can be no dispute that Walker I necessarily decided the consent issues herein discussed.

7

It is plain that the denial of suppression in Walker I does not fall into the narrow category of decisions that may never be appealed as a matter of law. If Walker is convicted of the charges in his other Hobbs Act case, then the denial of suppression will be appealable as any other order. Accordingly, Lummus's general rule of practical finality controls, rather than Gelb's exception for unreviewable orders.

It may nonetheless be argued that it is inappropriate to treat Walker I as final for purposes of the instant case because, if Walker is later acquitted in the case before Judge Abrams, then denial of suppression would not be appealable, and hence likely not imbued with preclusive effect. See United States v. Cheung Kin Ping, 555 F.2d 1069, 1076 (2d Cir. 1977). This argument is unpersuasive for two reasons. First, it would render Lummus's long-established rule of practical finality a dead letter, because it would amount to a bright-line requirement that an order must always be subject to appellate review before it has any preclusive effect. "[T]hat is not the law in this Circuit[.]" See TM Patents, 72 F. Supp. 2d at 375. Second, the law has long tolerated the possibility that collateral estoppel may, in rare and unusual circumstances, lead to inconsistent results. For example, notwithstanding the dictum in Gelb, it is settled law, not just in the Second Circuit but also in the Supreme Court, that a district court judgment is imbued with preclusive effect while an appeal is pending. See Coleman v. Tollefson, 135 S. Ct. 1759, 1764 (2015) ("[A] judgment's preclusive

8

effect is generally immediate, notwithstanding any appeal."); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 905 F.2d 610, 621 (2d Cir. 1990) ("[P]endency of a criminal appeal generally does not deprive a judgment of its preclusive effect."). Such a rule may plainly lead to a district court judgment being given preclusive effect in a second case, only to see the first decision overturned on appeal - and potentially after the second litigation has itself resolved. In other words, established rules of collateral estoppel already countenance the exact scenario that could obtain if Kevin Walker is ultimately acquitted before Judge Abrams. The Court is therefore not persuaded that that possibility requires treating Walker I as non-final.

The Court is thus persuaded that Walker I has binding effect on this Court so far as the instant suppression motion is concerned. Nonetheless, the Court has independently undertaken the arduous task of reviewing de novo the hearing in Walker I and has independently arrived at the same conclusion as Judge Abrams. It is to be hoped, however, that, if other courts find this Opinion persuasive, such duplication of effort will not be required in the future.

In any event, for both of the foregoing and independent reasons, Kevin Walker's motion to suppress evidence obtained from a search of his bedroom on March 30, 2016 is hereby denied. The Clerk of Court is directed to close the motion at docket entry number 37.

SO ORDERED.

Dated: New York, NY
       March 5, 2017

_____
JED S. RAKOFF, U.S.D.J.